GRAHAM**HOLLIS** APC
Graham S.P. Hollis (SBN 120577)
ghollis@grahamhollis.com
Vilmarie Cordero (SBN 268860)
vcordero@grahamhollis.com
Nathan Reese (SBN 283150)
nreese@grahamhollis.com
3555 Fifth Avenue Suite 200
San Diego, California 92103
Telephone: 619.692.0800
Facsimile: 619.692.0822

Attorneys for Plaintiff ANDREW POTTER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW POTTER,<br><br>Plaintiff,<br><br>v.<br><br>BIG TEX TRAILER MANUFACTURING, INC., BIG TEX TRAILER WORLD, INC.; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.:    5:18-cv-01678-PSG-KK<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**<br><br>Date:    September 30, 2019<br>Time:   1:30 p.m.<br>Dept:   6A<br>Judge: Hon. Philip S. Gutierrez |

# Table of Contents

I. INTRODUCTION ...................................................................................................1

II. FACTUAL BACKGROUND ..............................................................................2

    A.    Plaintiff's Claims and Procedural Background .........................2

III. SETTLEMENT TERMS AND RELIEF OBTAINED ..................................3

IV. LEGAL ARGUMENT .......................................................................................8

    1.    The Amount of the Settlement is Fair and Reasonable Based on the Potential Value of the Claims in Light of the Strengths and Weaknesses of the Claims Presented ...............................................10

    2.    The Results Achieved ..................................................................13

    3.    The Risk, Expense, Complexity, and Duration of Further Litigation ...........16

    4.    The Views of Experienced Counsel ............................................16

    5.    Conclusion. ..................................................................................20

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

# Table of Authorities

**United States Supreme Court Cases**

*Amchem Products, Inc., v. Windsor* 521 U.S. 591 (1997) .......................................... 18

*Boeing v. Van Gemert*, 444 U.S. 472 (1980) ........................................................ 7

*Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983) .......................................... 18

**California State Supreme Court Cases**

*Amaral v. Cintas Corp. No. 2* 163 Cal. App. 4th 1157 (2008) ...................................... 19

*Iskanian v. CLS Transp. L.A. LLC*, 59 Cal. 4th 348 (2014) ........................................ 19

*Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480 (2016) ............................................. 7

**Federal Cases**

*Armstrong v. Bd. of Sch. Directors*, 616 F.2d 305 (7th Cir. 1980) ................................ 9

*Barbosa v. Cargill Meat Sol. Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013) ............................ 15

*Berry v. School Dist. of City of Benton Harbor*, 184 F.R.D. 93 (W.D. Mich. 1998) ............ 9

*Chem Bank v. City of Seattle,* 955 F.2d 1268 (9th Cir. 1992) ...................................... 10

*Chem Bank v. City of Seattle,* 955 F.2d at 1268 (9th. Cir. 1992) .................................. 10

*Cotter v. Lyft Inc.* 176 F. Supp. 3d 930 (N.D. Cal. 2016) .......................................... 19

*Culley v Lincare Inc.* 236 F. Supp. 3d 1184 (E.D. Cal. 2017) ...................................... 19

*Dennis v. Kellogg Co.*, 697 F.3d. 858 (9th Cir. 2012) ............................................... 20

*Dunleavy v. Nadler*, 213 F.3d 454 (9th Cir. 2000) .................................................. 9

*Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ................................................... 9

*Fuentes v. Macy's W. Stores, Inc.*, No. CV1400790ODWFFMX, 2015 WL 9698989
   (C.D. Cal. June 29, 2015) ........................................................................... 7

*Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-0324 AWI SKO, 2012 WL 5364575
   (E.D. Cal. Oct. 31, 2012) ............................................................................ 20

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1988) .................................. 10, 17, 18

*Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133 (N.D. Cal. Apr. 3, 2009)......... 19

*Hopson, supra,* 2008 WL 3385452 (N.D. Cal. Aug. 8, 2008) ...................................... 20

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)....................... 9

*In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010) ............ 7

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

1  *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379 (D. Md. 1983) ........................................... 9

2  *James v. City of Dallas*, 254 F.3d 551 (5th Cir. 2001) ................................................................. 17

3  *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161 (9th Cir. 2014) ....................................................... 13

4  *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ............ 7

5  *Linney v.  Cellular Alaska Partnership,* 151 F.3d 1234 (9th Cir. 1998) ....................................... 9

6  *McDonald v. Airport Terminal Servs., Inc.*, No. EDCV 11-1946VAP(SPX), 2013 WL 12251409
    (C.D. Cal. Nov. 19, 2013) ............................................................................................ 7

7  *Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) ....................................................................... 17

8  *Moreno v. Autozone, Inc.* No. Co5-04432 MJJ, 2007 WL 1650942 (N.D. Cal. June 5, 2007) ............... 19

9  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ........................... 15

10  *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982) ................................. 10

11  *Officers for Justice v. Civil Service Commission*, 688 F.2d 615 (9th Cir. 1982) ............................ 15

12  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) ...................................... 7

13  *Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000) ................................................................... 7

14  *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403
    (C.D. Cal. June 10, 2005) ............................................................................................ 7

15  *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) ................................. 20

16  *Stewart v. San Luis Ambulance, Inc.,* 878 F.3d 883 (9th Cir. 2017) ........................................... 13

17  *Tawfilis v. Allergan, Inc.*, No. 815CV00307JLSJCG, 2018 WL 4849716
    (C.D. Cal. Aug. 27, 2018) ............................................................................................ 7

18  *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) .................................................. 10

19  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) ................................................... 10

20  *Ventura v. New York City Health and Hosp., Inc.*, 125 F.R.D. 595 (S.D.N.Y. 1989) .......................... 18

21  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ...................................................... 7

22  *Zubia v. Shamrock Foods Co.*, No. CV1603128ABAGRX, 2017 WL 10541431
    (C.D. Cal. Dec. 21, 2017) ............................................................................................ 19

23  **Federal Statutes**

24  29 U.S.C. §201, *et seq.* .................................................................................................. 9

25  **Federal Rules of Civil Procedure**

26  Fed. Rule. Civ. Proc. 23(e)(1)(c) ........................................................................................ 10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION

Fed. Rule Civ. Proc. 23(b)(3)(D) .................................................................................... 17

Fed. Rule Civ. Proc. Rule 23(e) ....................................................................................... 9

**Other Authorities**

James Wm. Moore et al., *Moore's Federal Practice*, § 23.22 (3d ed. 1999) ........................ 17

Alba Conte & Herbert Newberg, *4 Newberg on Class Actions* (2002) ("*Newberg*"), §§ 11.25.
    The *Manual for Complex Litigation* (Fourth) (2004) ...................................................... 9

**State Regulations**

California Labor Code § 203 ............................................................................................. 1

California Labor Code § 2699(e)(2) .................................................................................19

**Federal Regulations**

28 U.S.C. § 1441 ........................................................................................................ 2, 17

29 U.S.C. §§ 207, 211 (c), 216(b) ................................................................................... 2

Business & Professions Code §§ 17200 ........................................................................... 2

Private Attorneys General Act of 2004, Labor Code §§ 2698.......................................... 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

G<small>RAHAM</small>**HOLLIS** APC
3555 F<small>IFTH</small> A<small>VENUE</small> S<small>UITE</small> 200
S<small>AN</small> D<small>IEGO</small>, C<small>ALIFORNIA</small> 92103

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION

# I. **INTRODUCTION**

Plaintiff Andrew Potter ("Plaintiff") seeks preliminary approval of a non-reversionary $1,000,000 class and collective action settlement on behalf of himself and approximately 102 other similarly situated individuals and aggrieved employees who worked for Defendants Big Tex Trailer Manufacturing, Inc. and Big Tex Trailer World, Inc. ("Big Tex" or Defendants") in California. Plaintiff and Defendants are collectively referred to hererin as "Parties" and individually as "Party."

Defendants manufacture, sell, rent, and service trailers. Defendants operate in California and offer their products through dealers in the United States, Canada, and internationally. Defendants operate two locations within the state of California in Beaumont and Fontana, California.

Plaintiff Andrew Potter worked for Defendants from November 17, 2014 until January 30, 2018, as a salesperson at Defendant Big Tex's Beaumont location. Plaintiff alleges that Big Tex failed to pay him and Class Members overtime for all hours worked and were not provided with compliant meal and rest breaks along with other related wage and hour violations. Plaintiff, as a former employee, alleges that he along with other former employees who are members of the Waiting Time Penalties Subclass were not paid all of their wages at the time of separation of employment and thus seeks waiting time penalties pursuant to California Labor Code § 203. In addition, Plaintiff alleges that Class Members were not paid all contractual wages owed under Defendant's commission plan.

This settlement is an excellent result for Class Members and was reached after extensive investigation by the Parties, including a thorough analysis and review of Defendant's employment policies, Class Members' time and payroll records during the Class Period, in-depth Class Member interviews, and a full-day mediation before Steven Rottman, an experienced mediator well-versed in wage and hour class actions. The Settlement is also strongly supported by experienced counsel, who carefully considered the strength of the claims and Defendant's potential defenses, as well as the expense, complexity, risks, and likely duration of continued litigation. In light of the Parties' support for the Settlement, and because it satisfies all of the criteria for preliminary settlement approval under California law and relevant federal authority, and will provide significant monetary recovery to Class Members, preliminary approval of the Settlement is appropriate and should be granted.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION

## II.   FACTUAL BACKGROUND

### A.   Plaintiff's Claims and Procedural Background

On October 27, 2016, Andrew Potter filed this class, collective, and representative action in the Riverside County Superior Court, entitled *Potter v. Big Tex, Inc.*, Civil Case No. RIC 1813218. Plaintiff alleged multiple causes of action under the California Labor Code and the federal Fair Labor Standards Act ("FLSA") including:  (1) Failure to Provide Meal Periods; (2) Failure to Provide Rest Periods; (3) Failure to Pay Minimum and Regular Wages; (4) Failure to Pay All Overtime Wages; (5) Failure to Pay Commission Wages; (6) Failure to Indemnify Necessary Business Expenses; (7) Failure to Provide Accurate Itemized Wage Statements; (8) Failure to Maintain Accurate Records; (9) Failure to Timely Pay All Wages Due Separation of Employment; (10) Violation of Business & Professions Code §§ 17200, et seq.; (11) Violation of the Private Attorneys General Act of 2004, Labor Code §§ 2698, et seq.; and (12) Violation of the FLSA (29 U.S.C. §§ 207, 211 (c), 216(b)). On August 13, 2018, Defendants filed a Notice of Removal removing the case to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1441.

After conducting independent investigation of the allegations, the Parties agreed to engage in settlement negotiations and agreed to attempt to resolve Plaintiff's claims through private mediation. (Declaration of Graham S.P. Hollis ("Hollis Decl.") ¶[19-23].) The Parties agreed to exchange documents and information in order to prepare for the mediation. (*Id*.) Defendants agreed to provide information and documents, including time and payroll records, commissions agreements, applicable policies and handbooks, a list of class members, and a sample of class members' contact information. (*Id*.)

On May 20, 2019, the Parties participated in a private mediation with mediator Steven Rottman, which, after extensive negotiations between the Parties, resulted in a Stipulation and Settlement Agreement. (*Id*., ¶18-19.)

In sum, the Parties engaged in extensive negotiations conducted at arms-length and free from collusion. (*Id*., ¶19.) Each party is represented by experienced class action attorneys with specialized knowledge of class action employment law. In order to reach the final Settlement, the parties discussed and resolved many difficult legal and factual issues, in some cases with little or no governing law to guide them. During this process both sides were required to make reasonable compromises in light of the facts,

issues, and risks presented. In particular Class Counsel considered the uncertainty and risks of further litigation, and the difficulties inherent in such litigation. Class Counsel also considered the burdens of proof necessary to establish and maintain class certification and then to establish liability against Defendant and to defeat all the defenses raised by Defendant. All of these factors indicated that the best interests of the Class Members would be served by a settlement of this action in the manner and upon the terms set forth in the Joint Stipulation of Settlement and Release.

### III. SETTLEMENT TERMS AND RELIEF OBTAINED

The general structure and terms of the settlement are straightforward: following preliminary approval, the notice packet will be distributed to all Class Members. All Class Members who do not opt-out of the settlement (collectively, the "Participating Class Members") will receive their individual settlement allocations following final approval. (Hollis Decl., Ex. 1 (the "Settlement Agreement" or "SA").) Further, all Class Members who submit a timely FLSA Opt In Form will be deemed to have opted into the FLSA collective action and will be paid an additional sum of money for the settlement of claims under the FLSA. The basic terms of the Settlement Agreement are as follows:

**Settlement Amount:** Defendant will pay a Total Settlement Amount in the amount of $1,000,000 less a credit of $240,000 for payments previously made to Class Members. The Total Settlement Amount shall include the Settlement Administrator's costs for administering the settlement (not to exceed $10,750); Class Counsel's award of attorneys' fees (not to exceed $333,333.33); Class Counsel's reasonably incurred litigation costs (not to exceed $15,000); the individual Enhancement to the Class Representative (not to exceed $10,000); and the amount to be paid to the California Labor and Workforce Development Agency ("LWDA") ($37,500). The Total Settlement Amount does not include the employer's share of the applicable payroll taxes. Although Defendants will not oppose Class Counsel's request for the stated amount of fees and costs or for the Class Plaintiff's enhancement request, the award of such amounts is subject to Court approval and the settlement is not conditioned upon the Court granting theses requests. (SA, at ¶2.9.1.)

**Total Prepayment Credit:** The Total Settlement Amount ($1,000,000) will be reduced by $240,000 as a prepayment credit ("Total Prepayment Credit"), such that the only further amount Big Tex is obligated to pay under the terms of the settlement agreement is $760,000, in addition to the employer's

3

share of payroll taxes. After Plaintiff filed his letter with the LWDA, Defendants began to make payments to Class Members for claims and penalties that are the subject of this lawsuit. For example, Defendants began paying meal period premiums, recalculated overtime payments, and further paid individual settlement payments to 27 Class Members. Although the actual aggregate amount of these payments may exceed $240,000 at the time of preliminary approval, the parties agreed to allocate $240,000 as the prepayment credit for settlement purposes. (SA, at ¶1.54.)

**Scope of the Settlement Class:** The Settlement Class is comprised of all persons who are members of Non-Exempt Class. (*Id.* at ¶1.5.) The "Waiting Time Penalties Subclass" means all members of the Non-Exempt Class whose employment with Defendants ended at any time from and after June 28, 2015 through the Preliminary Approval Date. (*Id.* at ¶1.19.)

1.      **Settlement Administration:** CPT Group (the "Settlement Administrator") will provide notice to all Class Members. The Settlement Administrator will initially undertake address verification measures including utilization of an Accurint skip trace as well as searching the National Change of Address Database maintained by the United States Postal Service. This will ensure that all reasonable measures have been undertaken to obtain the most up to date address for Class Members before the Settlement Notice is mailed. The terms of the Settlement do not require Class Members to undertake the burden of completing and returning a claim form. Should any Class Member wish to opt out, the Notice of Settlement will explain how to inform the Settlement Administrator that they do not wish to participate in or be bound by the terms of the Settlement. Class Members will have sixty (60) calendar days to provide notice of their desire to opt out of the Settlement to the Settlement Administrator from the date of mailing of the Settlement Notice. Class Members who do not opt out of the Settlement will be entitled to their pro rata share of the Settlement.  (*Id.* at ¶2.5.1-4.)

**Settlement Allocation:** The settlement funds are allocated fairly and no Class or Class Member is receiving preferential treatment. The Settlement Administrator will determine Class Members pro rata portion of the applicable settlement funds by first determining each Class Member's "Adjusted Workweeks." Each Class Member's Adjusted Workweeks will be calculated by first determining the number of workweeks Class Members worked during the class period. Then, if the Class Member is a member of the Waiting Time Penalties Class, the Settlement Administrator will add an additional six

weeks. Then, if the Class Member was employed in a sales position, the Settlement Administrator will multiply the resulting number of workweeks by a multiplier to address the average pay differential between employees in sales positions and employees in non-sales positions. The number of Adjusted Workweeks will later be used to determine Class Members' individual payments on a pro rata basis. (SA, ¶¶ 1.11, 2.2.2)

The Net Settlement Fund ("NSF") amount (i.e. after deductions for Settlement Administration fees and costs, Class Counsel fees and costs, and enhancement payment to the Class Representative) will be divided between the Rule 23 Settlement Fund and the FLSA Collective Action Settlement Fund. (*Id.*, ¶2.2.2)

The Rule 23 Settlement Fund will be allocated 90% of the NSF. In addition, the Rule 23 will be reduced by the Total Prepayment Credit ($240,000) and increased by any unclaimed funds under the FLSA Collective Action Settlement Fund as described below. Each Class Member will be paid a pro rata share of the Rule 23 Settlement Fund based on his or her number of Adjusted Workweeks divided by the total number of Adjusted Workweeks for all Class Members. The Settlement Administrator will then deduct any amounts paid to Class Members for meal period premiums, overtime recalculations, and individual settlement payments (collectively "Individual Class Member Prepayment"). To the extent that any individual Class Member's payment amount under the Rule 23 Settlement Fund is less than $500, the Class Member's payment under the Rule 23 Settlement Fund will be increased to $500, so in no event will the amount paid to each Class Member from the Rule 23 Settlement Fund be less than $500. If, in determining individual Class Members' payments under the Rule 23 Settlement Fund, the Settlement Administrator is required to increase Class Members' payments to the minimum of $500, the Settlement Administrator will then reduce the payments to other Class Members under the Rule 23 Settlement Fund on a pro rata basis, so long as the amount paid to each Class Member from the Rule 23 Settlement Fund is not less than $500. All Class Members will receive their share of the Settlement proceeds under the Rule 23 Settlement Fund without the need to submit a claim form. (*Id.*, ¶2.2.2)

The FLSA Collective Action Settlement Fund will be the remaining 10% of the Net Settlement Fund. The Settlement Administrator will determine the amount that each Class Members will be entitled under the FLSA Collective Action Settlement Fund in the same manner as Rule 23 Settlement Fund, i.e.

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

by dividing each Class Member's individual Adjusted Workweeks by the total number of Adjusted Workweeks for all Class Members. Class Members who submit a timely and valid Opt In Form will be deemed a member of the FLSA collective action and will receive a payment from the FLSA Collective Action Settlement Fund. Any funds allocated to the FLSA Settlement Fund for which Class Members do not timely submit an FLSE Opt In Form will be redistributed to the Rule 23 Settlement Fund. (*Id.*, ¶2.2.2)

The settlement allocates $50,000 to claims under PAGA. 75% of this amount (i.e. $37,500) shall be paid to the LWDA. The remaining 25% (i.e. $12,500.00) shall be part of the Rule 23 Settlement Fund and distributed using the formula for distribution explained above.  This 75/25 percent allocation of PAGA penalties is the required allocation pursuant to Labor Code §2699(i). (*Id.* at ¶2.2.6.)

The settlement allocations for the Non-Exempt Class and Waiting Time Penalties Subclass and FLSA Collective Action Settlement Fund were based on the respective value of each of the claims according to Class Counsel's damage analysis as explained more fully below and in the Declaration of Graham S.P. Hollis filed in support of this motion. (Hollis Decl, ¶¶30-31.) No Class or Class Member is being given any kind of preferential treatment as the values of the claims for each class is based on the proportional values of the claims presented on behalf of each Class. Furthermore, because sales employees tended to earn a higher amount than non-sales employees, the settlement accommodates for the pay differential by using a multiplier for Sales Employees when allocating the Rule 23 Settlement Fund. (Hollis Decl, ¶¶30-31; SA, ¶¶1.11, 1.42.)

The Settlement Administrator will issue IRS forms and distribute settlement payments out of a qualified settlement fund (QSF). Settlement payments will be allocated 20% to wages reported on an IRS Form W-2, and 80% to non-wages reported on an IRS Form 1099. (SA, ¶2.2.4.)

**Attorneys' Fees and Costs:** Class Counsel seek an award of one-third, or $333,333.33 as payment for attorneys' fees for prosecuting this class, collective, and representative action. (*Id.*, ¶2.9.1) Class Counsel also seeks reimbursement of out of pocket expenses incurred not to exceed $15,000. (Hollis Decl., ¶64.) Class Counsel will bring a Motion for Attorneys' Fees and Costs no later than 14 days prior to the Class Settlement opt-out deadline. In the Ninth Circuit, the typical range of attorneys' fee awards from a common fund recovery is 20 to 33.3 percent, with 25 percent considered the benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). "[I]n most common fund cases, the award exceeds that benchmark."

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

*Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *5 (N.D. Cal. Feb. 2, 2009). Courts in this district routinely approve fee awards in common fund cases at 33 1/3%. *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *18 (C.D. Cal. June 10, 2005); *See also McDonald v. Airport Terminal Servs., Inc.*, No. EDCV 11-1946VAP(SPX), 2013 WL 12251409, at *10 (C.D. Cal. Nov. 19, 2013); *See also Fuentes v. Macy's W. Stores, Inc.*, No. CV1400790ODWFFMX, 2015 WL 9698989, at *2 (C.D. Cal. June 29, 2015); *See also Tawfilis v. Allergan, Inc.*, No. 815CV00307JLSJCG, 2018 WL 4849716, at *4 (C.D. Cal. Aug. 27, 2018).

The overwhelming majority of federal and state courts hold that when class action litigation establishes a monetary fund for the benefit of the class members, the court may determine the amount of a reasonable fee based on an appropriate percentage of the fund created. This was recently explained by the California Supreme Court in *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503 (2016). In group litigation, many class members benefit from the ultimate settlement, but they may not have played a large role in the litigation that led to the payment. *Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980). The common fund approach "thus spread[s] fees proportionately among those benefited by the suit." *Id.* Awarding a percentage of the total fund is routinely approved as a fair way to calculate a reasonable fee when contingency fee litigation has produced a common fund. *See*, *e.g.*, *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002).

Plaintiff will provide detailed briefing on their request for attorneys' fees in a separate motion. *See In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010). Here, Class Counsel seeks attorneys' fees in the amount of $333,333.33, representing 33.33% from the common fund, pursuant to the Parties' Settlement Agreement. Given that Class Counsel seeks a fee award commonly awarded in state and federal courts in California, Plaintiffs respectfully request that the court defer a detailed attorneys' fee analysis until the motion for attorneys' fees that will follow. This is appropriate since the factors considered in assessing whether the fee award is fair and reasonable (the results obtained, the risk of litigation, the skill required, the quality of the work performed, the contingent nature of the fee, and awards in similar cases) partially depend on Class Members' responses to the notice of settlement. Plaintiff's Counsel provides a summary of this analysis to facilitate approval.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION

**Non-Reversionary Settlement:** The settlement amount is non-reversionary and if any Class Members opt out of the settlement, amounts allocated to those individuals will not revert to Defendants. (SA, ¶1.43.) If checks remain uncashed after 180 days, those amounts will be donated to Salvation Army's California programs to benefit the unemployed and underemployed workers. (*Id*. at ¶2.7.2.)

**Limited Release:** The release is carefully tailored to the claims at issue in the case. Upon the Effective Date, the Class Representative and all Participating Class Members shall be deemed to have released "any and all wage and hour claims, obligations, demands, actions, rights, causes of action, and liabilities under state or local law, whether in law or equity, and related or derivative claims (including under the Private Attorneys General Act) that are alleged or that could have been alleged based on the facts alleged in the Complaint, and that accrued from June 28, 2014, through the Preliminary Approval Date." ("Released State Law Claims") (*Id*. at ¶1.39.) In addition, if Class Members submit a timely and valid FLSA Opt-In Form, upon the Effective Date, every Class Member participating in the collective action shall be deemed to have released any and all federal wage and hour law claims, obligations, demands, actions, rights, causes of action, and liabilities against Big Tex Releasees, of whatever kind and nature, character and description, that are alleged or that could have been alleged based on the facts alleged in the Complaint by a member of the Non-Exempt Class who is also a participating Class Member that accrued on any date up through and including the date on which the Court issues an order granting preliminary approval of the Settlement, for any type of relief, including without limitation claims for wages, damages, unpaid costs, penalties (including late payment penalties), premium pay, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, based on any and all claims arising under the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. §201, *et seq.*" ("Released Federal Law Claims") (*Id*. at ¶1.38.)

## IV. LEGAL ARGUMENT

### A.     Class Action Settlements are Subject to Court Review and Approval Under the Federal Rules of Civil Procedure.

A class action may not be dismissed, compromised, or settled without the approval of the Court. FRCP Rule 23(e). The decision to approve or reject a proposed settlement is committed to the Court's sound discretion. *Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Linney v. Cellular Alaska*

*Partnership,* 151 F.3d 1234, 1238 (9th Cir. 1998)). The purpose of the Court's Preliminary evaluation of the proposed Settlement is to determine whether it is within the "range of reasonableness," and thus whether notice to the Class and a formal fairness hearing are appropriate. *See* Alba Conte & Herbert Newberg, *4 Newberg on Class Actions* (2002) ("*Newberg*"), §§ 11.25. The *Manual for Complex Litigation* (Fourth) (2004) *("Manual"*) characterizes the preliminary approval state as an "initial evaluation" of the fairness of the proposed settlement made by the Court on the basis of written submissions and informal presentation from the settlement parties. *Manual* § 21.632. At this stage, the Court is not making a final determination on whether the Settlement is fair, reasonable, and adequate, as is ultimately required by FRCP Rule 23(e). Rather, the Court need only decide whether the settlement "appears to fall within the range of possible approval." *Armstrong v. Bd. of Sch. Directors*, 616 F.2d 305, 314 (7th Cir. 1980), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Berry v. School Dist. of City of Benton Harbor*, 184 F.R.D. 93, 97 (W.D. Mich. 1998) (the court first must determine "whether the proposed settlement is potentially approvable"); *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (likening preliminary approval to a finding that there is "probable cause" to submit the settlement to the class and to hold a full-scale final approval hearing); *Newberg* § 11.25. The Court must consider the due process concerns of absent class members. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

Courts must give "proper deference" to settlement agreements, because "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988) (quotations omitted.)

**B.    The Proposed Settlement is Fair, Adequate and Reasonable**.

The Court's determination of whether a proposed settlement is fair, adequate, and reasonable is often said to require a balancing of several factors. These factors may include, among others: "the strength of plaintiff's case; the risk, expense, complexity, and the likely duration of further litigation; the risk of

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (citation omitted.) A discussion of these factors supports the conclusion that the proposed Settlement is indeed "fair, adequate and reasonable." Further, the law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *Chem Bank v. City of Seattle,* 955 F.2d 1268, 1275 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

While the final analysis of whether the proposed settlement is fair, reasonable, and adequate is typically made after a hearing, Fed. R. Civ. P. 23(e)(1)(c), Plaintiff provides the Court with an initial assessment of these factors in order to facilitate the approval process. The Ninth Circuit's standard of evaluation of the fairness, adequacy, and reasonableness of a settlement requires this Court to balance several factors: the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. *Officers for Justice v. Civil Service Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982). *See also Chem Bank v. City of Seattle,* 955 F.2d at 1268, 1291 (9th. Cir. 1992). As outlined below, these factors support preliminary approval of the settlement.

**1.   The Amount of the Settlement is Fair and Reasonable Based on the Potential Value of the Claims in Light of the Strengths and Weaknesses of the Claims Presented**

The total amount of the settlement is $1,000,000. The total amount of the potential value of claims for Class Members and Waiting Time Penalties Subclass Members is approximately $3,142,696. (Hollis Decl., ¶30.)   The settlement is approximately 32% of the potential value of the claims, which is a very good result given the risks presented by pursuing claims for off-the-clock work, which are difficult to establish liability because they depend on proving that the employer knew or should have known that employees performed work off-the-clock. Similarly, Class Members' meal period claims present

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

challenges due to the fact that Big Tex's records showed that meal periods were taken by Class Members. (Hollis Decl., ¶29.) Big Tex will further point to the fact that it maintained compliant written reimbursement policies that were not followed, which again, presents challenges of proof.

The theoretical value of the PAGA claims is substantial due to Plaintiff's assumption of a 100% violation rate and Plaintiff's assumption that penalties could be "stacked" (i.e. each violation giving rise to a separate penalty for the same pay period). The damages assuming a 100% violation rate for every employee for each one week pay period amounts to $1,187,700. (Hollis Decl., ¶30.) However, in addition to the monetary settlement, Big Tex has instituted several changes to its policies, including revised written policies, the payment of meal period premiums, and recalculating Class Members' overtime based on the correct regular rate of pay. (Hollis Decl. ¶32.) Big Tex further made changes to its commission plan to address any ambiguity. This is of significant value to the current and future employees of Big Tex. The Settlement Agreement allocated $50,000 to penalties under PAGA, which will result in a payment to the LWDA of $37,500 and $12,500, which is added to the Rule 23 Settlement Fund. (SA, ¶2.2.6.)

The settlement amount is reasonable in light of the damages calculated for Plaintiff and the litigation risks. Class Counsel calculated damages for mediation purposes based on: 1) each individual's pay rate, as determined from Defendants' records; 2) each individual's actual days worked, as determined based on data produced by Defendants; 3) an assumption based on interviews with Class Members that each Class Member worked approximately 0.44 hours of unpaid overtime per shift; 4) an assumption of a 50% violation rate for unpaid overtime claims under state and federal law; 5) overtime paid at 1.5 times the regular rate for all hours worked over 40 in a workweek (and over 8 hours in a day under California law) and the calculations assume that overtime damages are doubled under the liquidated damages provisions of the FLSA; 6) a 80% violation rate for meal periods during the class period; 7) an assumption of a 100% violation rate on the rest period claims during the class period; 8) an assumption of PAGA penalties for 82.5% of the pay periods for overtime violations, meal period, rest period, and reimbursement expenses during the applicable period for PAGA penalties; 9) an assumption of 100% violation rate for incorrect pay stubs during the time period covered by Labor Code § 226; 10) waiting time penalties based on the number of former Class Members during the period covered by Labor Code § 203 according to Defendants' records; and 11) an assumption that the penalty imposed for a PAGA penalty would be $100

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

11

1  for a first violation and $200 for a second violation. (Hollis Decl., ¶30.)

2        Based on the above assumptions, Class Counsel calculated the damages of Class Members at

3  approximately $2,185,811 for claims for unpaid overtime (State and FLSA), meal period, rest period,

4  unpaid commissions, and unreimbursed expense violations. Class Counsel calculated the associated

5  PAGA penalties to be approximately $1,187,700, and waiting time penalties to be $230,815. (Hollis Decl.,

6  ¶30-31.) Accordingly, the estimated value of Plaintiff's claims premised on an optimistic "everything goes

7  right" scenario for each claim, for a maximum class-wide damages exposure, is approximately

8  $3,373,511. (*Id.*, ¶34.)

9        In reaching this settlement, Class Counsel carefully considered the strength of the case versus the

10 amount offered in settlement, as well as the risk, expense, and complexity of maintaining class certification

11 through trial. (*Id., ¶¶*19; 35-36.) Class Counsel analyzed the merits of the class claims and each one

12 presented significant hurdles. For example, Plaintiff's most valuable claims in this case are the meal/rest

13 period and unpaid wages claims, which, although Plaintiff believes they are meritorious, are potentially

14 vulnerable to Defendants' defenses. (*Id.* ¶¶30; 28.)

15       Defendants consistently maintained Big Tex fulfilled its duties to provide meal periods and

16 authorize and permit rest periods. Big Tex maintains that Class Members had autonomy in the execution

17 of their duties and were allowed to leave the premises and not required to remain on-duty. (*Id.*, ¶28.)  Big

18 Tex further denies that Class Members were required to use their personal cell phones in the execution of

19 their duties and points to its written policies that provide for reimbursement of business expenses as long

20 as they are approved by Class Members' supervisors. (*Id.*) Big Tex also maintains that any work performed

21 by Class Members off-the-clock was performed without its permission, that Big Tex was unaware that

22 Class Members had performed duties off-the-clock, and that, if Big Tex had known that Class Members

23 had performed work off-the-clock, it would have provided them compensation for their work. (*Id.*) In

24 short, Big Tex maintains that it did not engage in and cannot be liable for any Labor Code, Wage Order,

25 or FLSA violations experienced by Plaintiff and Class Members. These factors, in addition to information

26 gathered from Class Member interviews, which presented potentially individualized issues among the

27 Class, raised significant obstacles to Plaintiff maintaining class certification.

28       The claim of missed rest periods had the highest value but also held its own challenges regarding

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

12

maintaining certification and meeting the standards for manageability. California law does not mandate that employees record rest breaks. Therefore, the lack of written records of rest breaks could be a possible barrier in obtaining class certification and further proving this cause of action. Defendants are likely to further argue that they maintained a written policy stating that they would provide all breaks as may be required by law. In addition, Plaintiff's claims of off-the-clock work will likely present challenges as there are no records to demonstrate that Class Members were working off-the-clock. In addition, Plaintiff would need to show that Defendants had actual knowledge or should have known that Class Members were performing work off-the-clock. *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014). Proving what an employer knew or should have known will likely further present challenges of proof. Defendants will also likely argue that Plaintiff's claims for waiting time penalties claim under Labor Code § 203 should be limited, because Defendants may have been able to assert that a "good faith dispute" existed that any unpaid wages were due at the separation of their employment. The issue of whether violations of meal and rest period regulations give rise to claims under Labor Code §§ 203 and 226 remains an unresolved question. See, *Stewart v. San Luis Ambulance, Inc.,* 878 F.3d 883 (9th Cir. 2017).

As set forth in the accompanying declaration, Class Counsel's damages estimate for the meal/rest period and unpaid wages claims were derived using the average hourly rate of pay for Class Members, the estimated number of Class Members employed by Defendants at any given time, and the estimated number of shifts that Class Members worked each pay period. (*Id.*, ¶¶30-35.) Class Counsel's estimate also took into account that class certification had not been granted, but assumed that Plaintiff would prevail in obtaining class certification, establish liability on all claims alleged, and that Plaintiff's estimates of damages would be awarded in their entirety. (*Id.*)

The Total Settlement Amount of $1,000,000 is an excellent result for the Class given the Parties' conflicting evidence, which may have resulted in a jury substantially undercutting the projected value of the claims, if not eliminating some or all them. (*Id.*, ¶¶27-29, 75.)

### 2.    The Results Achieved

This settlement represents exceptional value to the class. The reasonableness of the proposed settlement is underscored by the fact that Defendants have potentially viable grounds for not only challenging its liability, but also Plaintiff's estimate of the potential value of each claim, the most valuable

13

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

of which—Class Members' rest break claims—Defendants assigned a near zero-dollar value. (*Id.*, ¶¶28-30.) Indeed, since this litigation began, Defendants have vehemently denied any liability for the claims alleged, contending that it followed all applicable law with respect to Plaintiff and Class Members' employment and that even if Defendant were found liable, Plaintiff's estimate of damage was inflated. (*Id.*, 15, 28, 55.)  Furthermore, to the extent Plaintiff claims he was subject to illegal policies or procedures during his employment, Defendant maintains that Plaintiff's claims are unique to him alone and are in no way representative of other employees.

By contrast, the Individual Settlement Payments to Class Members will provide fair and reasonable recovery to the entire Class without further delay. (Hollis Decl. ¶36-46.) While the amounts paid to Class Members represent a discount on Plaintiff's estimate of the overall exposure to Defendants, this reduction represents an extremely reasonable compromise considering the substantial risks Plaintiff would face maintaining class certification and establishing liability on all claims against Defendants. (*Id.*) The Settlement commits Defendants to create a Total Settlement Fund that will provide Class Members a significant financial recovery and extinguish the risks attendant to continued litigation and any appeals that would likely be filed following the class certification decision or judgment in Plaintiff's favor. Indeed, such efforts by Defendants would likely result in a delay of several years before this case could finally be resolved, whereas the Settlement provides Class Members with a significant and timely recovery from the $1,000,000 settlement amount, making it well within the range of reasonableness.

Plaintiff contends that he and other Class Members regularly worked shifts in excess of 8 hours a day; however, even if Plaintiff establishes liability, there would inevitably be factual disputes about how much time during each shift was compensable, which could reduce the damage award. The same is true for Plaintiff's others claims, and factual disputes regarding the violations rates could further reduce the damage award.

The settlement reflects a compromise on all of the disputed issues identified above. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 628 (9th Cir. 1982). As the Ninth Circuit noted in *Officers for Justice*, "[u]ltimately the amount of the [settlement payments] will be less than what some class members feel they deserve but, conversely,

1  more than the defendants feel those individuals are entitled to. This is precisely the stuff from which

2  negotiated settlements are made." *Id*. The Court should approve the Settlement because the payments to

3  Plaintiffs are substantial, and they represent a reasonable compromise of Plaintiff's FLSA and related state

4  law wage and hour claims.

5          The settlement also reflects a compromise in that it avoids the uncertainty of continued litigation.

6  Even if the Parties obtained judicial resolution on disputed issues, that would take time and resources

7  directed toward litigation. Generally, "unless the settlement is clearly inadequate, its acceptance and

8  approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms.*

9  *Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). Indeed, this settlement avoids

10 expenditures of resources for all parties and the Court, and provides "significant benefit that [Plaintiffs]

11 would not receive if the case proceeded—certain and prompt relief." *Barbosa v. Cargill Meat Sol. Corp.*,

12 297 F.R.D. 431, 446 (E.D. Cal. 2013).

13         Assuming approval of the requested fees and costs, approximately $593,416.67, including amounts

14 previously paid by Defendants to Class Members, will be distributed to the Class Members. (Hollis Decl.

15 ¶38.) $37,500 will be distributed to the LWDA. (*Id*.) These are substantial sums that adequately recognize

16 Plaintiff's and Class Members' damages as well as claims for penalties held by the State, and compensates

17 each of them appropriately. Approximately 102 members of this class will receive an average payment of

18 $5,817.81 from the total $1,000,000 settlement. Because the settlement accounts for a pre-payment credit

19 for amounts previously paid to Class Members (i.e. the Total Pre-Payment Credit of $240,000),

20 $353,416.67 will be distributed to Class Members upon final approval, assuming approval of the requested

21 fees and costs. Therefore, the approximately 102 members of this class will receive an average payment

22 of $3,464.87 from the total settlement after it is reduced to account for amounts previously paid to Class

23 Members, and for the requested fees and costs. The actual amount recoverable by a particular Class

24 Member will depend on the number of workweeks that class member worked; however, in no event will

25 a Class Member receive less than $500. (SA, ¶2.2.2.) The Class Member will receive approximately

26 $44.89 per workweek, and if a class member worked every week during the class period s/he will receive

27 approximately $12,030.52.

28 ///

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION

### 3.     The Risk, Expense, Complexity, and Duration of Further Litigation

This case has been litigated efficiently, with both Parties cognizant that full-blown litigation would be costly and protracted. Without this settlement, the Parties would face contested class certification, decertification, and summary judgment motions, necessitating additional discovery and costs. Wage and hour trials are complex, expensive, and unpredictable. If Plaintiff and Class Members were to prevail in establishing liability, Defendant would likely appeal. Accordingly, there is no quick and easy route to payment for Class Members absent this settlement. This factor therefore supports approval of the settlement.

### 4.     The Views of Experienced Counsel

Class Counsel's experience is outlined above and on the accompanying Declaration of Graham Hollis and exhibits thereto. (Hollis Decl., ¶¶6-12., Ex. 2) As noted there, Class Counsel have extensive experience in complex California wage and hour litigation. Counsel for all parties agree that the settlement is fundamentally fair, adequate, and reasonable. This settlement agreement is the result of arms-length negotiations, between experienced counsel representing the interests of Plaintiff and Defendants, facilitated by a skilled mediator, after thorough factual and legal investigation.

### C.     The Proposed Rule 23 Class Should be Conditionally Certified

### 1.     All Rule 23(a) Prerequisites Certification Are Present.

Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes. *Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003). A proposed settlement class is still subject to the requirements of FRCP Rule 23(a) and (b) which are "designed to protect absentees by blocking unwarranted or overbroad class definitions." *Amchem*, 521 U.S. at 620. However, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Id*. Plaintiff respectfully submits that conditional certification is appropriate because the Settlement Agreement satisfies the requirements of both Rule 23(a) and Rule 23(b)(3).

a. Rule 23(a)(1) —Numerosity

There are approximately 102 Class Members (Id., ¶74.) A putative class of this size satisfies the

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

1    Rule 23(a)(1) numerosity element in the settlement context. 5 James Wm. Moore et al., *Moore's Federal*

2    *Practice*, § 23.22 (3d ed. 1999).

3                    b. Rule 23(a)(2) —Commonality

4       The commonality preconditions of Rule 23(a)(2) are "construed permissively." *Hanlon, supra,*

5    150 F.3d at 1019. The presence of simply one common issue whose resolution will affect all or significant

6    number of the putative class members suffices to satisfy the commonality requirement. *James v. City of*

7    *Dallas*, 254 F.3d 551, 570 (5th Cir. 2001). Plaintiff's alleged Labor Code violations are common to each

8    member of each class. For settlement purposes, Plaintiff's claims meet the minimum burden of

9    establishing commonality.

10                    c. Rule 23(a)(3) —Typicality

11       Under this rule's "permissive standards," the representative Plaintiff's claims are "typical" if they

12    are "reasonably co-extensive with those of absent class members." *Hanlon,* 150 F.3d at 1020. The

13    typicality requirement is satisfied if Plaintiff's claims arise from the same events or course of conduct that

14    give rise to the claims of other class members and are based on the same legal theory. *Ventura v. New*

15    *York City Health and Hosp., Inc.*, 125 F.R.D. 595, 600 (S.D.N.Y. 1989). All of the Class Members were

16    subject to the same written policies and all allegedly suffered the same Labor Code violations. Similarly,

17    Plaintiff is a former employee and as such his claims for waiting time penalties are typical of the Waiting

18    Time Subclass Members. Furthermore, the claims of Plaintiff and the putative Class are based on identical

19    legal theories. Based on the foregoing, the typicality requirement is also satisfied in the settlement context.

20             d. Rule 23(a)(4) —Adequacy of Representation

21       Adequacy requirements are established on the basis that the proposed Class Representative,

22    Named Plaintiff, has no conflict of interest with other Class Members and is represented by qualified

23    counsel. *Hanlon*, *supra,* 150 F.3d at 1020. Plaintiff's Counsel are well-situated to assume the

24    responsibilities of Class Counsel because they are experienced employment and class action litigators who

25    are fully qualified to pursue the interests of the Class. They are adequate class counsel under Rule 23(a)(4)

26    and meet the criteria for fairly and adequately representing the class under Rule 23(g)(1).

27    **2**. **Rule 23(b)(3) —Predominance and Superiority.**

28       The predominance inquiry focuses on the relationship between the common and individual issues,

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

17

testing whether the proposed classes are sufficiently cohesive to warrant adjudication by representation. *Amchem Products, Inc., v. Windsor* 591 at 521 U.S. at 623. Plaintiff contends several questions of law and fact are common to his claims and to those of the putative Class and provide a justification for handling the dispute on a representative rather than on an individual basis for settlement purposes. *Id*. Class treatment is also the superior method for resolving all claims in this case because a class action would (1) accomplish judicial economy by avoiding multiple suits, and (2) protect the rights of persons who might not be able to present claims on an individual basis. *See generally Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345 (1983). This is true in the settlement context, because the Court need not consider the manageability (or lack thereof) of a trial. Given the sheer number of Class Members, and resolution of claims spanning nearly five and half years, it is clear that class treatment is the superior method to resolve the claims pleaded herein.

### 3. PAGA Penalty Claims.

In a PAGA action, the state is the real party in interest, and the action is "fundamentally a law enforcement action designed to protect the public and not benefit private parties." *Iskanian v. CLS Transp. L.A. LLC,* 59 Cal. 4th 348, 387 (2014). PAGA allows employees to stand in the shoes of the LWDA and recover civil penalties for labor code violations. *See Culley v Lincare Inc.* 236 F. Supp. 3d 1184, 1191 (E.D. Cal. 2017); *Cotter v. Lyft Inc.* 176 F. Supp. 3d 930, 942 (N.D. Cal. 2016). Courts have discretion concerning the amount of PAGA penalties to be awarded. *See* Labor Code Section 2699(e)(2) "a court may award a lesser amount than the maximum civil penalty amount specified by this part if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." In this case there is particular probability that a court would exercise discretion to reduce the amount of civil penalties given that Big Tex changed its policies and practices in order to address the claims alleged by Plaintiff in this lawsuit. Nevertheless, assuming liability was found, the court is required to award some amount of penalty and the court cannot refuse to award penalties in their entirety. *See Moreno v. Autozone, Inc*. No. Co5-04432 MJJ, 2007 WL 1650942, at *3-4 (N.D. Cal. June 5, 2007); *Amaral v. Cintas Corp. No. 2* 163 Cal. App. 4th 1157, 1210-11 (2008).

The settlement of PAGA for civil penalties in the sum of $50,000, 75% of which ($37,500) will be paid to the LWDA, reserving $12,500 to be paid to the Class, is reasonable and appropriate under the

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

1    circumstances. The $37,500 portion to be paid to the LWDA was not the result of self-interest at the

2    expense of other Class Members. Where settlements "negotiate[] a good faith amount" for PAGA

3    penalties and "there is no indication that this amount was the result of self-interest at the expense of other

4    Class Members," such amounts are generally considered reasonable. *Hopson v. Hanesbrands Inc*., No.

5    CV-08-0844 EDL, 2009 WL 928133, at *9 (N.D. Cal. Apr. 3, 2009).

6           The potential PAGA penalties were calculated at $100 for the first violation and $200 for the

7    second violation. The number of class members assumed to be part of the PAGA period was 55 and 30

8    people at any given time.  The calculation also assumed a discretionary reduction of the value of the PAGA

9    claim Reduction per Labor Code § 2699(e)(2) of 50%. This calculation yielded a potential PAGA penalty

10   of $1,187,700. The amount to be paid to the LWDA is larger than many other PAGA settlement amounts

11   approved by the courts where seemingly nominal amounts were allocated for such claims. See, e.g. *Zubia*

12   *v. Shamrock Foods Co.*, No. CV1603128ABAGRX, 2017 WL 10541431, at *14 (C.D. Cal. Dec. 21, 2017)

13   (approving a PAGA settlement of 0.1%); *Hopson, supra,* 2008 WL 3385452, at *1 (N.D. Cal. Aug. 8,

14   2008) (approving a PAGA settlement of 0.3% or $1,500); *Garcia v. Gordon Trucking, Inc.,* No. 1:10-CV-

15   0324 AWI SKO, 2012 WL 5364575, at *3 (E.D. Cal. Oct. 31, 2012) (approving a PAGA settlement of

16   0.27%).

17          **4. Cy Pres Distribution.**

18          The Parties anticipate that, as is common in class, collective, and representative actions, there will

19   be some unclaimed funds, even after redistribution of the funds declined through the Opt-Out process.

20   Thus, a plan is required for distributing those unclaimed funds. *Six Mexican Workers v. Ariz. Citrus*

21   *Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990). Cy pres distribution allows unclaimed funds to indirectly

22   benefit the entire class. *Id.* at 1305. This approach requires the cy pres award to qualify as "the next best

23   distribution" to giving the funds directly to the class members. *Dennis v. Kellogg Co*., 697 F.3d. 858, 865

24   (9th Cir. 2012).

25          "Not just any worthy charity will qualify as an appropriate cy pres beneficiary[;]" and there must

26   be "a driving nexus between the plaintiff class and the cy pres beneficiary." *Id.* Thus, the Parties have

27   designated the Salvation Army's California programs to benefit the unemployed and underemployed

28   workers, which serves such workers in gaining the employment skills and experience necessary to obtain

19

1 employment and support them during periods of unemployment as the cy pres beneficiary of unclaimed
2 funds.

3    **5.    Conclusion.**

4      For the foregoing reasons, Plaintiff respectfully requests that the Court grant preliminary approval
5 of the proposed Settlement, grant conditional certification pursuant to FRCP Rule 23 for settlement
6 purposes only, appoint Plaintiff as the Class Representative for the purpose of settlement, appoint
7 Plaintiff's attorneys as Class Counsel, approve as to form the proposed Notice to the Settlement Classes,
8 appoint CPT Group as the Claims Administrator, and set a final approval hearing date.

9

10  Dated: August 12, 2019                    GRAHAM**HOLLIS** APC

11

12                                  By: _____
13                                       Graham S.P. Hollis
                                         Vilmarie Cordero
14                                       Nathan Reese
                                         Attorneys for Plaintiff Andrew Potter